IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| J.D. IRVING, LIMITED,<br><br>         Plaintiff,<br><br>         v.<br><br>UNITED STATES and U.S.<br>DEPARTMENT OF COMMERCE,<br><br>         Defendants. | Court No. 22-0256 |

DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:

BENJAMIN JUVELIER
Attorney-Advisor
Office of the Chief Counsel
   for Trade Enforcement and Compliance
U.S. Department of Commerce

ERIC E. LAUFGRABEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-7995
Email:      Eric.E.Laufgraben@usdoj.gov

March 14, 2025

Attorneys for Defendants

## TABLE OF CONTENTS

QUESTION PRESENTED .................................................................................................1

STATEMENT OF FACTS ...............................................................................................1

    I.     Statutory And Regulatory Background ...........................................................1

    II.    Factual Background ........................................................................................3

          A.     AR 2 Final Results ...............................................................4

          B.     AR 3 Final Results ...............................................................5

          C.     JDI Requested Reviews Of Its Entries Beginning in AR 4 ...........................6

    III    *J.D. Irving I* .................................................................................................7

    IV.   *J.D. Irving II* ...............................................................................................9

ARGUMENT ...............................................................................................................10

    I.     Standard Of Review .....................................................................................10

    II.    JDI Cannot Invoke This Court's Jurisdiction Under § 1581(i)(1) ...............11

          A.     Jurisdiction Under Section 1581 .........................................11

          B.     *J.D. Irving I* Requires Dismissal Of This Suit ...............15

CONCLUSION .............................................................................................................18

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aireko Constr. LLC v. United States*,
  425 F. Supp. 3d 1307 (Ct. Int'l Trade 2020) ........................................................ 15

*ARP Materials, Inc. v. United States*,
  47 F.4th 1370 (Fed. Cir. 2022) ................................................................... 11-12

*Canadian Solar Int'l Ltd. v. United States*,
  68 F.4th 1267 (Fed. Cir. 2023) ...................................................................... 1, 2

*Crow Creek Sioux Tribe v. United States*,
  900 F.3d 1350 (Fed. Cir. 2018) ....................................................................... 10

*Deckers Corp. v. United States*,
  752 F.3d 949 (Fed. Cir. 2014) ..................................................................... 15, 16

*Design Int'l Grp., Inc. v. United States*,
  113 F. Supp. 3d 1342 (Ct. Int'l Trade 2015) ........................................................ 10

*Erwin Hymer Grp. N. Am. v. United States*,
  930 F.3d 1370 (Fed. Cir. 2019) ....................................................................... 13

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*,
  938 F.3d 1355 (Fed. Cir. 2019) ....................................................................... 10

*J.D. Irving, Ltd. v. United States*,
  119 F.4th 48 (Fed. Cir. 2024) ................................................................... *passim*

*J.D. Irving, Ltd. v. United States*,
  615 F. Supp. 3d 1323 (Ct. Int'l Trade 2022) ......................................................... 8

*Rimco, Inc. v. United States*,
  98 F.4th 1046 (Fed. Cir. 2024) ....................................................................... 17

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
  672 F.3d 1041 (Fed. Cir. 2012) ........................................................................ 2

<u>Statutes</u>

19 U.S.C. § 1516a ................................................................................ passim

19 U.S.C. § 1673f ................................................................................... 3, 6

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

19 U.S.C. § 1675 ................................................................................................ 2, 3, 17

19 U.S.C. § 1677 ...................................................................................................... 17

28 U.S.C. § 1581 ................................................................................................ *passim*

<u>Administrative Materials</u>

19 C.F.R. § 351.102 .................................................................................................. 17

19 C.F.R. § 351.212 ................................................................................................ 2, 7

19 C.F.R. § 351.213 .............................................................................................. 2, 17

83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018) ................................................ 3

85 Fed. Reg. 76,519 (Dep't of Commerce Nov. 30, 2020) ........................................ 7

86 Fed. Reg. 68,471 (Dep't of Commerce Dec. 2, 2021) .......................................... 7

88 Fed. Reg. 50,106 (Dep't of Commerce Aug. 1, 2023) ...................................... 6, 7

89 Fed. Reg. 67,067 (Dep't of Commerce Aug. 19, 2024) ........................................ 6

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| J.D. IRVING, LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES and U.S.<br>DEPARTMENT OF COMMERCE,<br><br>    Defendants. | Court No. 22-0256 |

DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION

Pursuant to Rule 12(b)(1) of the Rules of the Court of International Trade, defendants, the United States and U.S. Department of Commerce, respectfully requests that the Court dismiss the amended complaint filed by plaintiff, J.D. Irving, Limited. (JDI), because the Court lacks jurisdiction to entertain it.

QUESTION PRESENTED

Whether this Court has 28 U.S.C. § 1581(i)(1) jurisdiction over JDI's suit when the U.S. Court of Appeals for the Federal Circuit has already determined that JDI cannot invoke § 1581(i)(1) jurisdiction in a virtually identical case, *J.D. Irving, Ltd. v. United States*, 119 F.4th 48 (Fed. Cir. 2024) (*J.D. Irving I*).

STATEMENT OF FACTS

I.    Statutory And Regulatory Background

"Commerce imposes antidumping duties when it 'determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value,' resulting in actual or threatened harm to a domestic industry." *Canadian Solar Int'l Ltd.*

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

*v. United States*, 68 F.4th 1267, 1270 (Fed. Cir. 2023) (quoting 19 U.S.C. § 1673)). "Foreign exporters of merchandise that is subject to an antidumping duty order must deposit preliminary estimated antidumping duties" (*i.e.*, cash deposits) "when the merchandise enters the United States, but the final antidumping duty rate is determined later, during annual retrospective administrative reviews." *Id.* (citing 19 C.F.R. § 351.212(a)). Thus, the cash deposits paid during a given period represent estimated antidumping duties, which are not resolved until the period's completion. *See Sioux Honey Ass'n v. Hatford Fire Ins. Co.*, 672 F.3d 1041, 1047 (Fed. Cir. 2012).

Each year, on the anniversary date of the antidumping duty order, parties choose whether to seek an administrative review of their entries (or, for a domestic interested party, another party's entries) to determine whether the dumping margin has changed during the review period. 19 U.S.C. § 1675(a)(1), (2); 19 C.F.R. § 351.213. If no review is requested for a given period, Commerce assesses final antidumping duties at "rates equal to the cash deposit of . . . estimated antidumping duties" paid at entry. 19 C.F.R. § 351.212(c)(1)(i). If review is requested for a given period, Commerce determines the final antidumping duties for that period based on the record created during an administrative review.

Commerce's final results in an administrative review generally have two effects—one retrospective, the other prospective. As for the retrospective effect, the specific entries in the review period are "liquidated" (assessed final antidumping duties) at the rates determined in the administrative review—assuming no appeals. 19 U.S.C. § 1675(a)(2)(C).; *see also id.* § 1516a(c), (g)(5) As for the prospective effect, Commerce instructs U.S. Customs and Border Protection (CBP) to update the cash deposit rate for future entries to match the final antidumping duty rate determined in the administrative review. 19 U.S.C. § 1675(a)(2)(C)

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

If, after review, final antidumping duties owed are less than cash deposits paid, then Commerce refunds the overage with interest.  19 U.S.C. § 1673f(b)(2).  If the final antidumping duties owed are more than cash deposits paid, then the party must make up the shortfall.  *Id.*

Whether or not review is requested, Commerce does not separately "determine" cash deposit rates for defined periods in the way it determines antidumping duties for a specific period of review.  Rather, if the final antidumping duty changes from one period to another, Commerce adjusts the cash deposit rate—up or down—based on its most-recent antidumping duty rate determination.

II.    Factual Background

JDI is a Canadian producer and exporter of softwood lumber products, and an importer of record.  Am. Compl. ¶ 9.  On January 3, 2018, Commerce issued an antidumping order covering softwood lumber from Canada.  *See Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination*, 83 Fed. Reg. 350 (Dep't of Commerce Jan. 3, 2018).

Commerce initiated its first administrative review (AR 1) of the order for the June 30, 2017 to December 31, 2018 period of review, for which review of JDI's entries was requested.  *J.D. Irving I*, 119 F.4th at 52.  Commerce issued the AR 1 final results on November 30, 2020, in which it assigned JDI a 1.57% "non-selected" antidumping duty rate for entries during the period of review.[1]  Am. Compl. ¶ 20.  In turn, Commerce adjusted JDI's existing 6.04% cash deposit

---

[1]  Under 19 U.S.C. § 1675(a), "interested parties," including domestic and foreign producers, and importers, may request administrative reviews.  Where the number of companies subject to a review is large, Commerce may calculate a company-specific antidumping duty rate for a subset of companies.  For participating companies that are not selected for individual examination, Commerce generally calculates a "non-selected companies" rate by averaging the margins for selected individually-examined respondents.  *See, e.g.*, Am. Compl., Ex. 2.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

rate set following the investigation to match the 1.57% antidumping duty rate assessed in the AR 1 final results.  *Id.* .

Before AR 1 was complete, Commerce began a second administrative review for the 2019 period (AR 2) on March 10, 2020, in which review was again requested of JDI's entries.  *J.D. Irving I*, 119 F.4th at 52.  Similarly, before AR 2 was completed, Commerce initiated the third review covering the 2020 period (AR 3).  *Id.*  Because no party sought review of JDI's 2020 entries in AR 3, on April 16, 2021, Commerce issued liquidation instructions directing CBP to liquidate JDI's 2020 entries at the cash deposit rates (6.04% and 1.57%) in effect on the dates of entry.  Am. Compl. ¶ 20.

C.    AR 2 Final Results

JDI wanted to ensure that it retained the 1.57% cash deposit rate even if a higher rate was determined in the forthcoming AR 2 final results.  Thus, during the AR 2 proceedings, JDI argued to Commerce in a case brief that "the [antidumping duty] cash deposit rate established for the year-2020 [period of review] must remain [JDI]'s cash deposit rate going forward (until changed in a review for a subsequent period, e.g., 2021, 2022, 2023)."  *J.D. Irving I*, 119 F.4th at 52 (internal quotation omitted).  According to JDI, the liquidation instructions for the 2020 entries constituted a "determination" that should establish the cash deposit rate for its 2021 entries.  Am. Compl., Ex. 10.  In the Issues and Decision Memorandum accompanying the AR 2 final results, Commerce "(1) addressed the arguments JDI raised in its July 2021 case brief, and (2) amended the non-selected companies' rate to 11.59%."  *J.D. Irving I*, 119 F.4th at 52.  "Commerce explained that although JDI 'is under review in this 2019 review [i.e., AR 2] . . . no review of [JDI]'s 2020 sales is being conducted' and '[w]hen an entity is not under review, such as [JDI] in 2020 administrative review [i.e., AR 3], [Commerce] do[es] not update its cash

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

deposit rate.'" *Id.* (internal citation omitted) (alterations in original). Commerce confirmed that the liquidation instructions for the 2020 entries did not constitute a "determination" for setting a cash deposit rate. Am. Compl., Ex. 10. "Accordingly, 'consistent with [19 U.S.C. § 1675(a)(1)], [Commerce's] regulations, and numerous rulings by the courts, [Commerce] . . . assigned [JDI] a cash deposit rate based on the non-selected companies' rate determined for these final results [in AR 2].'" *Id.* (internal citation omitted). In turn, Commerce instructed CBP to "collect cash deposits on JDI entries at the 11.59% rate assigned in the AR 2 Final Results." *J.D. Irving I*, 119 F.4th at 52-53.

    D.    AR 3 Final Results

    Although no review was requested of JDI's 2020 entries in AR3, JDI participated in AR3 as an "interested party" by submitting a case brief to Commerce in which JDI continued to object to paying the 11.59% cash deposit rate assigned in the AR 2 Final Results. Am. Compl. ¶ 5 and Exs. 3, 13. As in AR 2, JDI argued that it is entitled to retain the 1.57% cash deposit rate from AR 1, which it argued is the dumping rate established by operation of law for AR 3, going forward, even if a more-recent review establishes a different rate. *Id.*, Ex. 3 at 2, 7.

    Commerce issued the AR 3 final results on August 9, 2022. *Id.,* Ex. 2. In the Issues and Decision Memorandum accompanying the AR 3 final results, Commerce considered JDI's arguments about the cash deposit rate. Commerce determined that JDI was not entitled to maintain the 1.57% cash deposit rate determined in AR 1, thus reaffirming its earlier conclusion that the liquidation instructions issued in 2021 do not comprise a "determination" that would establish JDI's cash deposit rate. *Id.* at 43. Thus, Commerce made no change to the 11.59% cash deposit rate for JDI's entries.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

E.    <u>JDI Requested Reviews Of Its Entries Beginning in AR 4</u>

On August 1, 2023, Commerce released the final results for the fourth administrative review for the 2021 period (AR 4), in which JDI had requested review of its entries. *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Admin. Review; 2021*, 88 Fed. Reg. 50,106, 50,107 (Dep't of Commerce Aug. 1, 2023). The AR 4 final results for the 2021 period assessed a 6.20% final antidumping duty on JDI's 2021 entries—higher than the 1.57% cash deposit rate paid between January and November 2021, but lower than the 11.59% cash deposit rate paid in December 2021. Commerce directed CBP to reduce JDI's cash deposit rate accordingly. *Id.* at 50,108. The AR 5 final results for the 2022 period assessed a 7.66% final antidumping duty on JDI's 2022 entries, which was lower than the 11.59% cash deposit rate paid on its entries during that year. *See Certain Softwood Lumber Prods. From Canada: Final Results of Antidumping Duty Admin. Review, Partial Rescission of Administrative Review, and Final Determination of No Shipments; 2022*, 89 Fed. Reg. 67,067 (Dep't of Commerce Aug. 19, 2024). Where JDI's AR 4 and AR 5 final assessed antidumping duties are lower than the cash deposits paid by JDI during these periods, JDI will receive a refund with interest. 19 U.S.C. § 1673f(b)(2).

Keeping track of the changes is often challenging because the administrative review process may span multiple years. For instance, AR 2 involved entries in 2019, was requested in 2020, and the final results were issued in 2021. As such, the AR 2 antidumping rate established the cash deposit rate for entries between December 2021 until August 2023, when a new cash deposit rate was established in AR 4. Below is a chart reflecting, by year, the cash deposit rate paid by JDI and the assessed antidumping duty rate.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

| | 2019 | 2020 | | 2021 | | 2022 | 2023 | | 2024 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Jan – Nov. 2020[2] | Dec. 2020 | Jan – Nov. 2021[3] | Dec. 2021 | | Jan. – July 2023[4] | Aug.– Dec. 2023 | Jan – Aug 2024 | Aug. 2024 – Present |
| Cash Deposit Rate | 6.04% | 6.04% | 1.57% | 1.57% | 11.59% | 11.59% | 11.59% | 6.20% | 6.20% | 7.66% |
| Assessed Antidumping Duty Rate | 11.59% | 6.04% | 1.57% | 6.20% | | 7.66% | TBD | | TBD | |
| JDI Review Requested | Yes | No | | Yes | | Yes | Yes | | Yes | |
| Review Period | AR 2 | AR 3 | | AR 4 | | AR 5 | AR 6 | | AR 7 | |

Thus, although JDI refers to a "year-2020 AD cash deposit rate," Am. Compl. ¶ 3, the term is inaccurate because JDI paid more than one cash deposit rate during 2020, 2021, 2023, and 2024. The cash deposit rates were adjusted during those years to match the final antidumping "rates established in the completed review covering the most recent time period"—*i.e.*, the final antidumping duties determined in the concluded AR 1, AR 2, AR 4, and AR 5 reviews. 19 C.F.R. § 351.212(a).

III. *J.D. Irving I*

JDI filed a Notice of Intent to Commence Judicial Review of the AR 2 final results with the USMCA Secretariat on December 21, 2021. *J.D. Irving I*, 119 F.4th at 53. A week later, on December 28, 2021, certain Canadian parties requested binational panel review. *Id*. By statute, the request for panel review terminated this Court's jurisdiction under 28 U.S.C. § 1581(c) to

---

[2] *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2017-2018*, 85 Fed. Reg. 76,519 (Dep't of Commerce Nov. 30, 2020).

[3] *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2019*, 86 Fed. Reg. 68,471 (Dep't of Commerce Dec. 2, 2021).

[4] *See Certain Softwood Lumber Prods. from Canada: Final Results of Antidumping Administrative Review; 2021*, 88 Fed. Reg. 50,106 (Dep't of Commerce Aug. 1, 2023).

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

review the final results of an administrative review of an antidumping order.  28 U.S.C.

§ 1581(i)(2)(B); 19 U.S.C. § 1516a(g)(3)(B).

Nonetheless, on December 30, 2021, JDI filed its complaint in *J.D. Irving I*, which

alleged jurisdiction under this Court's "residual" jurisdiction provision, 28 U.S.C. § 1581(i)(1).

*J.D. Irving I*, 119 F.4th at 53.  JDI's complaint demanded that this Court issue an order directing

Commerce to: replace the 11.59% cash deposit rate with the prior 1.57% cash deposit rate for

entries after December 2, 2021; refund all cash deposits paid in excess of 1.57%; and maintain

1.57% as the cash deposit rate indefinitely.  *Id*.  The complaint also asked the Court for a

declaration that Commerce acted unlawfully by instructing CBP to update the cash deposit rate

to match the 11.59% final antidumping duty rate determined in the AR 2 final results.  *Id.*

In January 2023, this Court dismissed the *J.D. Irving I* complaint for lack of subject-

matter jurisdiction under USCIT Rule 12(b)(1).  *J.D. Irving, Ltd. v. United States*, 615 F. Supp.

3d 1323 (Ct. Int'l Trade 2022).  In October 2024, the Federal Circuit affirmed the dismissal.

*J.D. Irving I*, 119 F.4th at 57.  The Federal Circuit explained in a published decision that a

plaintiff cannot invoke this Court's jurisdiction under § 1581(i)(1) when (1) jurisdiction under a

difference subsection of § 1581 could have been available, unless (2) the provided remedy under

that subsection would be manifestly inadequate.  *J.D. Irving I*, 119 F.4th at 53.  Applying that

framework to JDI's case, the Court determined that 1581(i)(1) jurisdiction was unavailable

because (1) JDI could have brought its case under 1581(c) if binational panel review had not

been requested, and (2) JDI failed to show administrative and binational panel remedies were

manifestly inadequate.  *Id.* at 55-57.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

## IV.    *J.D. Irving II*

After Commerce published the AR3 final results on August 9, 2022, JDI filed a Notice of

Intent to Commence Judicial Review of the AR 3 final results with the USMCA Secretariat on

August 29, 2022.  Am. Compl., Ex. 4.  A week later, on September 8, 2022, certain Canadian

parties requested binational panel review of the AR 3 final results under the USMCA, *id.*, Ex. 5,

thus terminating this Court's jurisdiction to review the AR 3 final results.  19 U.S.C.

§ 1516a(g)(2)(B).

On September 9, 2022, JDI filed a complaint in this Court that was virtually identical to

its *J.D. Irving I* complaint, except that JDI challenged the AR 3 final results, rather than the AR 2

final results.  *See* ECF No. 1.  From the outset, JDI recognized that this case presents the same

jurisdictional issue as *J.D. Irving I*.  In initially seeking to consolidate this case with *J.D. Irving

I*, JDI explained that the two cases "involve the same legal issues," "the same parties, and

overlapping administrative records."  Mot. to Consolidate, ECF No. 9 at 6.  JDI confirmed that

"the jurisdictional issue in [this case] is identical to the one raised in [*J.D. Irving I*], such that

additional briefing and argument of the issue in [this case] would be unnecessary."  *Id.* at 6 n.1.

Before the Court ruled on JDI's motion to consolidate, JDI filed a consent motion to stay this

case pending resolution of *J.D. Irving I*.  Mot. to Stay, ECF No. 10.  In that motion, JDI asserted

that a stay was warranted to promote judicial economy because if *J.D. Irving I* "were ultimately

dismissed for lack of jurisdiction, the same reasoning would likely mean that the Court also lacks

jurisdiction to consider Plaintiff's appeal in [this case]."  *Id.* at 6.  The Court granted JDI's

motion to stay.  ECF No. 11.

As JDI recognizes, *J.D. Irving I* held that JDI could not invoke this Court's § 1581(i)(1)

jurisdiction because the true nature of its suit was a challenge to the AR 2 final results.  Am.

9

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

Compl. ¶ 4.  Although JDI previously advised this Court that *J.D. Irving I* would control the disposition of the jurisdictional issue here, JDI refused to voluntarily dismiss the complaint. Instead, JDI filed an amended complaint, in which it abandoned its previous representation that the cases present "identical" jurisdictional issues and now asserts that there is a "fundamental difference" between the two cases that would permit this one to proceed—namely, that review of JDI's entries was requested for AR 2, but not for AR 3.  Am. Compl. ¶ 4.  However, that distinction makes no difference with respect to the jurisdictional issue here.  *J.D. Irving I* is controlling and requires dismissal of this suit for lack of subject-matter jurisdiction.

<u>ARGUMENT</u>

I.    <u>Standard Of Review</u>

A plaintiff bears the burden to demonstrate that subject-matter jurisdiction exists.  *Design Int'l Grp., Inc. v. United States*, 113 F. Supp. 3d 1342, 1344 (Ct. Int'l Trade 2015) (citations omitted).  Whether jurisdiction exists is a question of law for the Court.  *Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (citation omitted).

The Federal Circuit applies the "Supreme Court's 'plausibility' requirement for facial challenges to claims under Rule 12(b)(6), as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), . . . to facial challenges to subject-matter jurisdiction under Rule 12(b)(1)."  *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354-55 (Fed. Cir. 2018).    Thus, "[t]o survive a motion to dismiss [for lack of subject-matter jurisdiction], a complaint must contain sufficient factual matter" that would plausibly establish subject-matter jurisdiction, if true.  *Id.* (quoting *Iqbal*, 556 U.S. at 678). Accordingly, "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice."  *Id*.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

## II.    JDI Cannot Invoke This Court's Jurisdiction Under § 1581(i)(1)

Rule 12(b)(1) compels dismissal of JDI's amended complaint because JDI fails to establish this Court's subject-matter jurisdiction over its suit.  JDI challenges Commerce's refusal to change JDI's cash deposit rate as set forth in the AR 3 final results.  Although jurisdiction for this type of claim ordinarily falls under § 1581(c), jurisdiction under that provision is unavailable in this Court because the AR 3 final results are pending before a binational panel.  19 U.S.C. § 1516a(g)(2)(B).  To get around this jurisdictional bar, JDI alleges that its claims may be brought under § 1581(i)(1) because they concern the "administration and enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  Am. Compl. ¶ 8.

The Court and the Federal Circuit have already determined that JDI cannot seek review of Commerce's determination regarding JDI's cash deposit rate under § 1581(i)(1) as set forth in the AR 2 final results.  The same reasoning applies to this suit challenging Commerce's determination regarding JDI's cash deposit rate as set forth in the AR 3 final results.  Like JDI's challenge to the AR 2 final results in *J.D. Irving I*, JDI's challenge to the AR 3 final results could have been brought under § 1581(c) absent the request for binational panel review, and the available remedies are not manifestly inadequate.  Thus, the Federal Circuit's binding rulings in *J.D. Irving I* confirm that JDI cannot invoke this Court's jurisdiction under § 1581(i)(1).

### A.    Jurisdiction Under Section 1581

This Court's jurisdiction is "governed by 28 U.S.C. § 1581, with each of its subsections 'delineating particular laws over which the Court of International Trade may assert jurisdiction.'"  *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022)

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

(quoting *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988)).  The two provisions relevant to this case are § 1581(c) and § 1581(i)(1).

Section 1581(c) provides:

> (c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. §§ 1516a, 1517].

28 U.S.C. § 1581(c).

Section 1581(i)(1) provides:[5]

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> > (A) revenue from imports or tonnage;
>
> > (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> > (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> > (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a) to (h) of this section.

28 U.S.C. § 1581(i)(1).

---

[5]  Under the USMCA Implementation Act, Congress renumbered the paragraphs under the first part of 28 U.S.C. § 1581(i) as 28 U.S.C. § 1581(i)(1)(A)-(D).  Previously, those paragraphs were numbered 28 U.S.C. § 1581(i)(1)-(4).  *See* USMCA Implementation Act, Pub. L. 116-113, 134 Stat 11, 65, § 423 (2020).  Thus, what is now 28 U.S.C. § 1581(i)(1)(A) was previously § 1581(i)(1); what is now § 1581(i)(1)(B) was previously § 1581(i)(2), and so forth.

In addition, before Congress enacted the USMCA Implementation Act, the text that is now at 28 U.S.C. § 1581(i)(2)(A)-(B) was a standalone paragraph under 28 U.S.C. § 1581(i).

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

Section 1581(i)(1) is often called the Court's "residual jurisdiction," but Federal Circuit "precedent is 'unambiguous [and] clear that [§ 1581(i)(1)'s] scope is strictly limited.'" *Erwin Hymer Grp. N. Am. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (first alteration in original) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 961 F.2d 356, 359 (Fed. Cir. 1992)). "This is so because an 'overly broad interpretation' of § [1581(i)(1)] would otherwise 'threaten to swallow the specific grants of jurisdiction contained within the other subsections.'" *Id.* (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)).

Accordingly, the Federal Circuit has determined that Section 1581(i)(1) jurisdiction may not be invoked when "jurisdiction under a different subsection of § 1581 could have been available," unless the "provided remedy would have been manifestly inadequate." *J.D. Irving I*, 119 F.4th at 53 (quoting *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024)).

Section 1581(i)(2)(B) further clarifies limits on this Court's jurisdiction when an antidumping determination is subject to review by a binational panel:

> (2) This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by—
>
> . . .
>
> (B) a binational panel under section 516A(g) of the Tariff Act of 1930 (19 U.S.C. 1516a(g)).

28 U.S.C. § 1581(i)(2).

The purpose of § 1581(i)(2) is to "assure that a litigant cannot invoke the CIT's 'residual jurisdiction' . . . for the purpose of circumventing the binational panel system." S. Rep. 100-509, at 35. Thus, in enacting Section 1581(i)(2)(B), Congress clarified its intent "to withdraw jurisdiction from the CIT over [antidumping] determinations" that are reviewable by binational panels. H.R. Rep. 103-361, at 86.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

In addition to the jurisdictional bar in Section 1581(i)(2), Congress also foreclosed judicial review of a determination that is subject to a binational panel review request under 19 U.S.C. § 1516a(g)(2):

> **(2) Exclusive review of determination by binational panels.**
>
> If binational panel review of a determination is requested pursuant to article 1904 of the Agreement or article 10.12 of the USMCA, then except as provided in paragraphs (3) and (4)—
>
> (A) the determination is not reviewable under subsection (a), and
>
> (B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2) (bold in original).

Here, if the true nature of JDI's suit is a challenge to the AR 3 final results, then jurisdiction could have been available in this Court under § 1581(c).  In turn, given the request for binational panel review, this Court would lack jurisdiction over JDI's suit.  *See* 28 U.S.C. § 1581(i)(2); 19 U.S.C. § 1516a(g)(2)(B).  But if the true nature of JDI's suit is a challenge to the administration and enforcement of the AR 3 final results—rather than the final results themselves—then jurisdiction for its claim could arise under § 1581(i)(1), such that its case may proceed here.  But as the Federal Circuit held in *J.D. Irving I*, "the proper source of the CIT's jurisdiction over JDI's action would have been § 1581(c)," such that the existing request for binational panel review of the final results terminates this Court's jurisdiction over the case.  *J.D. Irving I*, 119 F.4th at 55.  *J.D. Irving I* is controlling and requires dismissal of this suit.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

B.    *J.D. Irving I* Requires Dismissal Of This Suit

"*Stare decisis* 'deals only with law' and each prior precedential holding of the court becomes a 'statement of the law or precedent, binding in future cases before the same court or another court owing obedience to its decision.'" *Deckers Corp. v. United States*, 752 F.3d 949, 956 (Fed. Cir. 2014) (quoting *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)). The underlying rationale is to "'enhance[] predictability and efficiency in dispute resolution and legal proceedings' through creation of settled expectations in prior decisions of the court." *Id.* (alteration in original) (quoting *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1281 (Fed. Cir. 2014)). Thus, "[d]ecision of the Court of Appeals for the Federal Circuit bind [this Court], unless overruled by an *en banc* decision by that court or by the Supreme Court." *Aireko Constr. LLC v. United States*, 425 F. Supp. 3d 1307, 1312 (Ct. Int'l Trade 2020).

These principles of stare decisis confirm that *J.D. Irving I* requires dismissal of this suit. In determining that the true nature of JDI's suit was a challenge to the AR 2 final results in *J.D. Irving I*, the Federal Circuit relied on three key points: (1) JDI raised its assertion that it is entitled to a 1.57% cash deposit rate in a case brief submitted to Commerce during the AR 2 proceedings; (2) Commerce addressed JDI's cash deposit argument in the AR 2 final results; and (3) JDI previously stated in its Notice of Intent to Seek Judicial Review submitted to the USMCA panel that it was challenging the AR 2 final results. *Id.* Accordingly, the Federal Circuit explained that, absent the request for binational panel review, "the proper source of the CIT's jurisdiction over JDI's action would have been § 1581(c)," as it grants this Court "'jurisdiction over actions brought under [19 U.S.C. § 1516a], which includes challenges to the final results of an administrative review by a participant in that review.'" *J.D. Irving I*, 119 F.4th

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

at 55 (alteration in original) (quoting *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003)).

The same reasoning applies here.  As in *J.D. Irving I*, JDI contends that the "true nature" of its suit is a challenge to Commerce's "administration and enforcement" of antidumping duties through cash deposit instructions, rather than a challenge to the AR 3 final results.  Am. Compl. ¶¶ 4, 5, 8, 9.  But the same three key points that informed *J.D. Irving I* are present here.  First, JDI raised its assertion that it is entitled to a 1.57% cash deposit rate in a case brief submitted to Commerce in connection with the AR 3 administrative review.  Am. Compl., Ex. 3.  Second, Commerce addressed JDI's cash deposit arguments in the final results and explained that it rejected JDI's arguments for the same reason that it rejected them in AR 2.  *Id.*, Ex. 13.  Third, JDI then confirmed in its Notice of Intent to Seek Judicial Review submitted to the USMCA panel that it was challenging the AR 3 final results.  *Id.*, Ex. 4.

On top of the substantive overlap between this case and *J.D. Irving I*, JDI previously represented to the Court that both cases present the "identical" jurisdictional issue.  Mot. to Consolidate at 6 n.1.  JDI further stated that if *J.D. Irving I* "were ultimately dismissed for lack of jurisdiction, the same reasoning would likely mean that the Court also lacks jurisdiction to consider" this case.  Mot. to Stay at 6.  Given these circumstances, the Federal Circuit's rulings in *J.D. Irving I* require dismissal of this analogous suit.  *See Deckers Corp.*, 752 F.3d at 958-59.

Even so, JDI now argues that there is a "fundamental difference" between this case and *J.D. Irving I* in that JDI "was subject to the 2019 review [AR 2], [but] was not subject to the 2020 [antidumping] Review [AR 3]."  Am. Compl. ¶ 4.  When JDI alleges that it was "subject to" an administrative review, we understand it to mean that no review of its 2020 entries (AR 3)

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

was requested under 19 U.S.C. § 1675(a)(1).  But JDI fails to explain why that distinction makes a difference for jurisdictional purposes.

To begin, nothing in § 1581 conditions jurisdiction on whether an administrative review was requested.  *See* 28 U.S.C. § 1581.  Indeed, even if no review were requested, so long as jurisdiction under another section "*could have been available*," a party cannot invoke § 1581(i)(1) without showing that the "remedy provided under that other subsection would be manifestly inadequate."  *Rimco, Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024).  Moreover, § 1516a, which governs "judicial review in countervailing duty and antidumping duty proceedings," says nothing about whether a review was requested.  Rather, § 1516a provides that judicial review is available to an "interested party who is a party to the proceeding in connection with which the matter arises."  19 U.S.C. § 1516a(a)(2)(A).

An "interested party" includes any "foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise[.]"  19 U.S.C. § 1677(9).  In turn, a "[p]arty to the proceeding" means any "interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding."  19 C.F.R. § 351.102(36).

In both AR 2 and AR 3, JDI was "an interested party who is a party to the proceeding in connection with which the matter arises."  As alleged in the amended complaint, JDI "participated in [AR 3] as an interested party."  Am. Compl. ¶ 5.  Further, JDI is a "party to the proceeding in connection with" AR 3 because it actively participated by submitting a case brief in which it argued that Commerce must update its cash deposit rate to 1.57%.  *Id.*; *see also id.*, Ex. 3.  Thus, JDI satisfies the statutory requirement for a party to seek judicial review under

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

§ 1516a.  Whether or not JDI was "subject to" AR 3 has no bearing on this Court's jurisdiction over JDI's challenge to the AR 3 final results because, just as in *J.D. Irving I*, jurisdiction under § 1581(c) could have been available absent the request for binational panel review.  Given that the cases present the same legal issue, *J.D. Irving I* is controlling and requires dismissal of this suit for lack of subject-matter jurisdiction.[6]

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss the amended complaint.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director


s/Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

s/Eric E. Laufgraben

BENJAMIN JUVELIER                          ERIC E. LAUFGRABEN
Attorney-Advisor                                   Senior Trial Counsel
Office of the Chief Counsel                   Commercial Litigation Branch
   for Trade Enforcement and Compliance    Civil Division
U.S. Department of Commerce            U.S. Department of Justice
                                    P.O. Box 480
                                      Ben Franklin Station
                                      Washington, DC 20044
                                      Telephone: (202) 353-7995
                                      Email:       Eric.E.Laufgraben@usdoj.gov

March 14, 2025                                    Attorneys for Defendants

---

[6]  We recognize that the amended complaint removed JDI's allegations that binational panel and administrative remedies are "manifestly inadequate."  *Compare* Compl. ¶ 6, *with* Am. Compl. ¶ 6.  Accordingly, this motion focuses on whether JDI could have brought its suit under § 1581(c) absent the request for binational panel review.  If JDI contends that the available remedies are manifestly inadequate in response to our motion, we reserve our right to address that argument in our reply.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 3/14/2025 3:43 PM

CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendants' counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 5,272 words.

s/ Eric E. Laufgraben

March 14, 2025

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| J.D. IRVING, LIMITED,<br><br>          Plaintiff,<br><br>          v.<br><br>UNITED STATES and U.S.<br>DEPARTMENT OF COMMERCE,<br><br>          Defendants. | Court No. 22-0256 |

<u>ORDER</u>

On consideration of defendants' motion to dismiss and plaintiff's response, and all other papers, it is hereby;

ORDERED that the motion is granted; and

ORDERED that the complaint is dismissed.

IT IS SO ORDERED.


Dated: _____          _____