**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| J.D. IRVING, LIMITED,<br><br>           Plaintiff,<br><br>     v.<br><br>UNITED STATES and U.S.<br>DEPARTMENT OF COMMERCE,<br><br>           Defendants. | Court No. 22-0256 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff J.D. Irving, Limited ("J.D. Irving" or "Plaintiff") respectfully requests that the Court deny Defendant's motion to dismiss this action.  J.D. Irving raises a novel legal claim before this Court:  that the U.S. Department of Commerce ("Commerce") violated U.S. law (19 U.S.C. § 1675(a) and 19 C.F.R. § 351.212(c)(1)) by unlawfully omitting J.D. Irving from Commerce's cash deposit instructions and failing to reinstate its previously determined year-2020 dumping rate (1.57%) as the antidumping ("AD") cash deposit rate.  This rate should have been applied to imports entered from August 9, 2022, the date Commerce's final results in the 2020 administrative review ("2020 AD Review") were published in the *Federal Register*, *Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 48465 (Dep't Commerce Aug. 9, 2022) ("*2020 Review Final Results*"), until August 1, 2023, the date Commerce's final results in the 2021 administrative review were published in the *Federal Register*, *Certain Softwood Lumber Products from Canada*, 88 Fed. Reg. 50106 (Dep't Commerce Aug. 1, 2023) ("*2021 Review Final Results*").  *See* Commerce Cash Deposit Instructions, Message No. 2228402 (A-122-857) (Aug. 16, 2022) ("*2020*

1

AMERICAS 112027270

*Cash Deposit Instructions*") (Amended Compl. Attachment 1).  The only remedy for Commerce's unlawful action is a court-ordered injunction requiring Commerce to instruct U.S. Customs and Border Protection ("CBP"):  (1) to reinstate J.D. Irving's lawful AD deposit rate (1.57%) retroactively from August 9, 2022, until August 1, 2023, and (2) to refund excess AD cash deposits paid (*i.e.*, amounts paid in excess of the lawful 1.57% AD cash deposit rate) provided for imports of subject merchandise produced and exported by J.D. Irving with entry dates from August 9, 2022, until August 1, 2023.  Although a binational panel established under Article 10.12 of the United States-Mexico-Canada Agreement ("USMCA") will decide appeals of Commerce's *2020 Review Final Results*, J.D. Irving does not challenge any dumping margin or cash deposit rate calculated in the *2020 Review Final Results*.  The true nature of this action concerns the *2020 Cash Deposit Instructions*.  Consequently, this Court retains jurisdiction to entertain J.D. Irving's challenge to Commerce's unlawful cash deposit instructions to CBP under 28 U.S.C. § 1581(i).

In asking this Court to dismiss J.D. Irving's Amended Complaint, Defendant:  (1) disregards the Commerce action challenged by Plaintiff and (2) incorrectly asserts that J.D. Irving's claim should be dismissed based on a facile reading of *J.D. Irving, Ltd. v. United States*, 119 F.4th 48 (Fed. Cir. 2024) ("*J.D. Irving I*").  For these reasons, Defendant's motion to dismiss J.D. Irving's Amended Complaint must fail.

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

The AD duty order on certain softwood lumber products from Canada ("*Softwood Lumber from Canada*") was published on January 3, 2018.  *See Certain Softwood Lumber Products from Canada*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018).  Consequently, requests for administrative reviews under the AD duty order may be submitted in January of each year, the anniversary month of the order's publication.  *See* 19 C.F.R. § 351.213(b).

AMERICAS 112027270

"In making a decision whether or not to request an administrative review of certain entries, the parties rely on the cash deposit rate then in force for those entries." *Federal-Mogul Corp. v. United States*, 822 F. Supp. 782, 788 (Ct. Int'l Trade 1993).  In January 2021, when review requests for the 2020 period of review were due in the *Softwood Lumber from Canada* AD proceeding, J.D. Irving's AD cash deposit rate was 1.57%.  *See Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 76519, 76520–21 (Dep't Commerce Nov. 30, 2020) (final results 2017-2018 AD review) (assigning a 1.57% AD cash deposit rate to J.D. Irving as a "Non-Selected Company"). No party – neither J.D. Irving nor a domestic producer (or any other party) – requested an AD review of J.D. Irving for the 2020 period of review ("POR").  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12599, 12603 (Dep't Commerce Mar. 4, 2021) (omitting J.D. Irving from the list of Canadian producers/exporters subject to the year-2020 AD review) (Amended Compl. Attachment 6).  Consequently, in accordance with 19 C.F.R. § 351.212(c)(1), Commerce instructed CBP to assess AD duties on J.D. Irving's year-2020 entries at the AD cash deposit rate applicable upon entry of the merchandise, and to continue to use 1.57% as the company's AD cash deposit rate going forward.  *See* Commerce Automatic Liquidation Instructions, Message No. 1106404 (A-122-857) (Apr. 16, 2021) at ¶¶2 & 5 (Amended Compl. Attachment 7).

On May 20, 2021, Commerce issued the preliminary results in the 2019 AD review for the *Softwood Lumber from Canada* AD proceeding ("2019 AD Review").  *See Certain Softwood Lumber Products from Canada*, 86 Fed. Reg. 28551 (Dep't Commerce May 27, 2021) (prelim. results 2019 AD review) (Amended Compl. Attachment 8) ("*2019 Review Prelim. Results*").  J.D. Irving was subject to the 2019 review, but, like hundreds of other Canadian producers/exporters, was not selected as a mandatory respondent.  *See id.* at 28552–54.  Consequently, in accordance

3

with its practice, Commerce assigned such "Non-Selected Companies" the weighted average of the mandatory respondents' preliminary dumping margins, a preliminary rate of 12.05%.  *See id.* at 28551.  Commerce also indicated that, upon issuance of the final results in the 2019 AD Review, the final "Non-Selected Companies Rate" would serve as both (1) the assessment rate for imports of subject merchandise from Non-Selected Companies with entry dates during the 2019 POR and (2) the cash deposit rate for imports of subject merchandise from Non-Selected Companies (***including J.D. Irving***) going forward.  *See id.*

On November 23, 2021, Commerce issued the final results in the 2019 AD Review, amending the Non-Selected Companies Rate to 11.59%.  *See Certain Softwood Lumber Products from Canada*, 86 Fed. Reg. 68471, 68472 (Dep't Commerce Dec. 2, 2021) (final results 2019 AD review) (Amended Compl. Attachment 9) ("*2019 Review Final Results*").  In doing so, Commerce rejected J.D. Irving's argument that its 2020 AD cash deposit rate (1.57%) should continue to apply to J.D. Irving's entries, and announced that it would assign J.D. Irving a cash deposit rate "based on the final results" of the 2019 AD Review.  *See* Issues and Decision Memorandum for the Final Results of the 2019 Antidumping Duty Administrative Review (A-122-857) (Nov. 23, 2021) at 41-42 (Amended Compl. Attachment 10) ("*2019 AD Review IDM*").

On December 9, 2021, Commerce issued cash deposit instructions to CBP, changing J.D. Irving's AD cash deposit rate from the 2020 rate determined by operation of law under 19 C.F.R. § 351.212(c)(1)(ii) – 1.57% – to the rate determined in the 2019 AD Review – 11.59%.  *See* Commerce Cash Deposit Instructions, Message No. 1343410 (A-122-857) (Dec. 9, 2021) (Amended Compl. Attachment 11) ("2019 *Cash Deposit Instructions*").  On December 30, 2021, J.D. Irving commenced an appeal in this court of Commerce's *2019 Cash Deposit Instructions*. *See J.D. Irving, Limited v. United States and U.S. Department of Commerce*, Court No. 21-00641.

AMERICAS 112027270

On January 28, 2022, Commerce issued the preliminary results in the 2020 AD Review for the *Softwood Lumber from Canada* AD proceeding.  *See Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 6506 (Dep't Commerce Feb. 4, 2022) (prelim. results 2020 AD review) (Amended Compl. Attachment 12) ("*2020 Review Prelim. Results*").  The preliminary results indicated that, upon conclusion of the review, Commerce intended to update the mandatory respondents' and non-selected companies' AD cash deposit rates to reflect the 2020 dumping margins determined in the review.  *See id.* at 6506–07.  In contrast, J.D. Irving's AD cash deposit rate would remain at the dumping margin determined for the (prior) 2019 POR (11.59%), even though J.D. Irving already had a 2020 dumping rate determined by operation of law under 19 C.F.R. § 351.212(c)(1) (*i.e.*, 1.57%).

On March 14, 2022, J.D. Irving submitted a case brief in the 2020 AD Review.  *See* J.D. Irving Case Br. (Amended Compl. Attachment 3).  J.D. Irving argued that failure to update the company's AD deposit rate to the dumping margin determined by operation of law for the 2020 POR (1.57%) would violate the plain language of 19 U.S.C. § 1675(a)(2)(C), which requires assessment and cash deposit rates to be derived from the same dumping margin.  In addition, J.D. Irving argued that failure to update the company's AD deposit rate to the 2020 dumping margin would violate Congress's "express purpose" for amending § 1675(a) in 1984 to require administrative reviews only upon request – which was to prevent Commerce from having to conduct administrative reviews when petitioners and respondents alike are satisfied with existing AD rates.

On August 3, 2022, Commerce issued the final results in the 2020 AD Review. Disagreeing with J.D. Irving's argument, Commerce declined to update J.D. Irving's AD cash deposit rate from the dumping margin determined for 2019 (11.59%) to the most recent dumping

AMERICAS 112027270

margin established for 2020 (1.57%).  *See* Issues and Decision Memorandum for the Final Results of the 2020 Antidumping Duty Administrative Review (A-122-857) (Aug. 3, 2022) at 43–46 ("*2020 AD Review IDM*") (Amended Compl. Attachment 13).  Commerce asserted that its decision to keep J.D. Irving's AD deposit rate at the dumping margin determined for 2019 – despite previously having assigned the company an AD deposit rate of 1.57% for 2020 – was consistent with "its long-held practice of not updating the ***cash deposit instructions*** for companies not under review."  *2020 AD Review IDM* at 45 (emphasis added).  Commerce did not, however, address J.D. Irving's argument that the plain language of the AD statute (19 U.S.C. § 1675(a)(2)(C)) required Commerce to set J.D. Irving's AD cash deposit rate based on the same dumping margin used for the company's year-2020 assessment rate (most recently, 1.57%).  Nor did Commerce explain how its decision to continue collecting AD cash deposits from J.D. Irving at a 2019 dumping rate aligned with congressional intent – which was to prevent Commerce from having to conduct administrative reviews when petitioners and respondents alike are satisfied with existing AD rates.

On August 16, 2022, Commerce issued the *2020 Cash Deposit Instructions* to CBP, which (wrongly) omitted any instruction to replace J.D. Irving's AD cash deposit rate for 2019 (11.59%) with the AD cash deposit rate established for 2020 (1.57%).

On September 9, 2022, J.D. Irving commenced this appeal of Commerce's *2020 Cash Deposit Instructions*.

## ARGUMENT

This Court has jurisdiction to review Commerce's *2020 Cash Deposit Instructions* under 28 U.S.C. § 1581(i).  Plaintiff raises a novel legal claim that the USMCA panel reviewing the *2020 Review Final Results* would be unable to remedy, and challenges Commerce's "administration and

AMERICAS 112027270

enforcement" of the appropriate cash deposit rate for J.D. Irving – not the dumping rates calculated in the 2020 AD Review (which will be reviewed by the USMCA panel). Defendant's motion to dismiss J.D. Irving's Amended Complaint should be denied for two reasons. First, Defendant wrongly argues that USMCA panel review of the *2020 Review Final Results* deprives this Court of jurisdiction. Contrary to Defendant's assertion, J.D. Irving has not appealed Commerce's final determination in the 2020 AD Review; rather, J.D. Irving contests the *2020 Cash Deposit Instructions* issued to CBP. Second, in arguing that J.D. Irving's claim in this appeal is determined by *J.D. Irving I*, Defendant does not account for key distinguishing factors that demonstrate that the "true nature of the action" relates to the administration and enforcement of J.D. Irving's cash deposit rate.

## I.  PLAINTIFF HAS SATISFIED ITS BURDEN TO DEMONSTRATE THE COURT'S JURISDICTION UNDER 28 U.S.C. § 1581(i)

Defendant notes that "a plaintiff bears the burden to demonstrate that subject-matter jurisdiction exists." Def.'s Mot. to Dismiss at 10 (quoting *Design Int'l Grp., Inc. v. United States*, 113 F. Supp. 3d 1342, 1344 (Ct. Int'l Trade 2015)). Here, J.D. Irving demonstrated in its Amended Complaint that the Court has jurisdiction under 28 U.S.C. § 1581(i) to review Commerce's *2020 Cash Deposit Instructions* because jurisdiction is unavailable under any other subsection of § 1581. *See* Amended Compl. ¶¶2-8. In particular, the Court has jurisdiction under § 1581(i)(1)(D) because J.D. Irving challenges Commerce's "administration and enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" through Commerce's issuance of the unlawful *2020 Cash Deposit Instructions* to CBP.

The court considers two factors when determining whether jurisdiction lies under § 1581(i): (1) whether jurisdiction under another subsection of § 1581 is available and, if so, (2)

7

whether the remedy provided under such other subsection of § 1581 would be "manifestly inadequate." *See*, *e.g.*, *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992) (citation omitted); *Erwin Hymer Grp. N.A., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019); *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012); *Intercontinental Chems., LLC v. United States*, 483 F. Supp. 3d 1232, 1237-38 (Ct. Int'l Trade 2020). In determining whether jurisdiction "is or could have been available" under another subsection of 28 U.S.C. § 1581, the court "look[s] to the true nature of the action . . . ." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008). The "true nature" factual inquiry "requires [the] court to identify the particular agency action underlying the claimed harm . . . ." *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024).

The "particular agency action" underlying J.D. Irving's claimed harm concerns the *2020 Cash Deposit Instructions*. J.D. Irving does not contest the *2020 Review Final Results* because it was not subject to those results. Although J.D. Irving participated in that review as an interested party by submitting a case brief to Commerce, this does not change the "true nature of the action," which is Commerce's failure to update the *2020 Cash Deposit Instructions* to reflect the correct cash deposit rate for J.D. Irving. *See* J.D. Irving Case Br. (entirety) (Amended Compl. Attachment 3). Similarly, J.D. Irving's prior attempt to invoke this court's jurisdiction under § 1581(c) does not change the true nature of the action. *See* Letter from White & Case LLP to the U.S. and Canadian Secretaries of the USMCA, RE: Final Results of Antidumping Duty 2020 Administrative Review – Notice of Intent to Commence Judicial Review (Aug. 29, 2022) (Amended Compl. Attachment 4).

Unlike the appeal of the *2020 Final Review Results* that is before the USMCA panel, J.D. Irving's appeal of Commerce's *2020 Cash Deposit Instructions* does ***not*** concern the final

AMERICAS 112027270

dumping rates calculated by Commerce or the subject imports covered by the review. Consequently, this action is not a challenge to the *2020 Final Review Results*, but rather a challenge to Commerce's "administration and enforcement" of cash deposit rates in the *2020 Cash Deposit Instructions* to CBP – an action for which jurisdiction lies under 28 U.S.C. § 1581(i)(1)(D). *See Michaels Stores, Inc. v. United States*, 931 F. Supp. 2d 1308, 1312-13 (Ct. Int'l Trade 2013) (exercising jurisdiction under § 1581(i) to review Commerce's cash deposit and liquidation instructions). To this end, the Federal Circuit's concern in *J.D. Irving I* that "[a]llowing the CIT to exercise concurrent jurisdiction with a binational panel 'would strongly [and impermissibly] discourage the use of the [binational] panel system to challenge antidumping duties and make that procedure far less effective and useful than it was intended and expected to be," is absent here. 119 F.4th at 55 (quoting *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1351 (Fed. Cir. 2011)). This action does not raise any concerns regarding concurrent jurisdiction because J.D. Irving was not subject to the *2020 Review Final Results*. That is, J.D. Irving is not making any legal arguments related to the calculation of the dumping margins in the 2020 AD Review that established the cash deposit rates in the *2020 Review Final Results*.

Accordingly, the true nature of this action – the administration and enforcement of cash deposit rates through the *2020 Cash Deposit Instructions* – demonstrates that this Court retains jurisdiction under § 1581(i).

## II.    DEFENDANT MISIDENTIFIES THE AGENCY ACTION PLAINTIFF HAS APPEALED

Defendant wrongly argues that J.D. Irving's Amended Complaint should be dismissed for lack of subject matter jurisdiction. *See* Def.'s Mot. to Dismiss at 11 (citing U.S. Ct. Int'l Trade R. 12(b)(1)). Citing 19 U.S.C. § 1516a(g)(2), Defendant argues the Court is barred from reviewing J.D. Irving's claim because Commerce's *2020 Review Final Results* are subject to USMCA panel

9

review.  *See* Def.'s Mot. to Dismiss at 11, 14.  In this action, however, J.D. Irving does not contest the *2020 Review Final Results.*

Section 1516a(g)(2) deprives the court of jurisdiction to review an agency "determination" – here the *2020 Review Final Results* – for which USMCA panel review has been requested.  19 U.S.C. § 1516a(g)(2); *see also* 19 U.S.C. § 1516a(g)(1) & (a)(B)(iii) (treating a "final determination . . . under section 1675" as a "determination" for purposes of § 1516a(g)(2)).  Here, however, J.D. Irving contests Commerce's *2020 Cash Deposit Instructions* – ***not*** the *2020 Review Final Results* (*i.e.*, the agency's final determination under 19 U.S.C. § 1675).  Unlike the appeal of the *2020 Final Review Results* before the USMCA panel, J.D. Irving's appeal does ***not*** concern the final dumping rates calculated by Commerce or subject imports covered by the 2020 period of review.  Rather, J.D. Irving challenges Commerce's *2020 Cash Deposit Instructions*, which (wrongly) omitted any instruction to replace J.D. Irving's AD cash deposit rate for 2019 (11.59%) with the dumping rate mostly recently established for J.D. Irving for the 2020 POR (1.57%), contrary to 19 U.S.C. § 1675(a) and 19 C.F.R. § 351.212(c)(1).[1]

---

[1]  In the alternative, if Commerce's *Cash Deposit Instructions* could be considered a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B) ("{a} final determination . . . by the administering authority . . . under section 1675"), the court would still have jurisdiction under 28 U.S.C. § 1581(i) because any remedy provided by a USMCA panel would remain "manifestly inadequate" (for lack of authority to grant equitable or injunctive relief).  Under this alternative scenario, although a USMCA panel could review the merits of J.D. Irving's legal claim – *i.e.*, that it was unlawful for Commerce to decline to update the *2020 Cash Deposit Instructions* – USMCA panels lack the injunctive power to provide the relief J.D. Irving seeks: an injunction ordering Commerce to instruct CBP (1) reinstate J.D. Irving's previously determined 2020 AD cash deposit rate (1.57%), and (2) to refund excess AD cash deposits (*i.e.*, amounts paid in excess of the 1.57% AD cash deposit rate) provided for imports between August 9, 2022 and August 1, 2023.  The U.S. Court of International Trade has the injunctive power to provide this relief, and ***has*** provided such injunctive relief in setting aside an unlawful AD cash deposit rate. *See Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1377, 1384 (Ct. Int'l Trade 2017) ("*Cooper Tire I*") (holding that the AD cash deposit rate assigned to plaintiff was unlawful); *Cooper Tire & Rubber Co. v. United States*, No. 15-00251, 2017 Ct. Intl. Trade LEXIS 131, at *8-10 (Ct. Int'l Trade Sept.

AMERICAS 112027270

Defendant mistakenly relies on *J.D. Irving I* to justify its argument that J.D. Irving is challenging the *2020 Review Final Results* rather than the *2020 Cash Deposit Instructions*. Def.'s Mot. to Dismiss at 11. In doing so, Defendant fails to address Plaintiff's argument that the Federal Circuit's concerns regarding concurrent jurisdiction in *J.D. Irving I*, discussed above, are not present here. Defendant also fails to appreciate that J.D. Irving is not challenging anything related to the dumping margins calculated in the *2020 Review Final Results*, further distinguishing this case from *J.D. Irving I*, and discussed further below. Because Defendant misidentifies the agency action Plaintiff has appealed, its motion to dismiss is meritless.

### III. *J.D. IRVING I* IS NOT CONTROLLING BECAUSE OF FACTUAL DIFFERENCES THAT RELATE TO OPERATION OF LAW, THE ADMINISTRATION OF THE AD ORDER, AND THE SETTING OF CASH DEPOSIT RATES

Defendant argues that *J.D. Irving I* requires dismissal of this suit, asserting that the Federal Circuit's "same reasoning applies here."[2] Def.'s Mot. to Dismiss at 11. Defendant is wrong. Defendant states that the "same three key points that informed *J.D. Irving I* are present here":

> First, JDI raised its assertion that it is entitled to a 1.57% cash deposit rate in a case brief submitted to Commerce in connection with the AR 3 administrative review. Am. Compl., Ex. 3. Second, Commerce addressed JDI's cash deposit arguments in

25, 2017) ("*Cooper Tire II*") (issuing an injunction ordering Commerce to apply the lawful AD cash deposit rate retroactively and to instruct CBP to refund excess cash deposits).

Furthermore, if the court's jurisdiction to review Commerce's *2020 Cash Deposit Instructions* lies under 28 U.S.C. § 1581(c) but the *Cash Deposit Instructions* are not reviewable by a USMCA panel under 19 U.S.C. § 1516a(g)(1), J.D. Irving timely commenced this appeal through the filing of a Summons and Complaint within 30 days of the date Commerce issued the *Cash Deposit Instructions*.

[2]    Defendant also claims that J.D. Irving admitted that the jurisdictional issue in this case "is identical" to the one raised in *J.D. Irving I*, referencing Plaintiff's motion to consolidate. *See* Def.'s Mot. to Dismiss at 9. However, the submission Defendant references occurred prior to the Federal Circuit's decision in *J.D. Irving I*. Thus, Defendant's reliance on this statement in support of its argument lacks any relation to the Federal Circuit's analysis and reasoning in *J.D. Irving I*. As explained below, key factual distinctions demonstrate why *J.D. Irving I* is not controlling in this case.

AMERICAS 112027270

> the final results and explained that it rejected JDI's arguments for the same reason
> that it rejected them in AR 2. Id., Ex. 13. Third, JDI then confirmed in its Notice of
> Intent to Seek Judicial Review submitted to the USMCA panel that it was
> challenging the AR 3 final results. Id., Ex. 4.

Def.'s Mot. to Dismiss at 16.

This overlap does not alter the material difference in key facts underlying J.D. Irving's

challenge to the *2020 Cash Deposit Instructions*. Two factual differences demonstrate that the

"true nature of the action" now before the Court relates to setting the appropriate cash deposit rate

(independent from the *2020 Review Final Results*) and the refund of excess cash deposits paid –

an action purely related to the administration of antidumping duties and the type of action

specifically contemplated by 28 U.S.C. § 1581(i). The two factual differences that underpin the

new action are: **(1) that J.D. Irving was not subject to an administrative review for the 2020**

**POR, and (2) that J.D. Irving has challenged Commerce's *2020 Cash Deposit Instructions* –**

**_and is not challenging Commerce's final results._**

This action is neither a substantive challenge to the *2020 Review Final Results* nor a

challenge to the rate ultimately to be assessed for imports that entered during the 2020 POR.

Rather, J.D. Irving (1) seeks a judgment that Commerce's *2020 Cash Deposit Instructions*

unlawfully omitted J.D. Irving, and (2) requests a court order directing Commerce to instruct CBP

in two ways. **First,** J.D. Irving seeks to have its previously determined year-2020 AD dumping

rate (1.57%) reinstated with respect to imports entered from August 9, 2022[3] until August 1, 2023.[4]

This was what was required by operation of law. **Second**, J.D. Irving seeks a refund of excess AD

---

[3]  The date Commerce's final results in the 2020 AD Review were published in the *Federal Register*.

[4]  The date Commerce's final results in the 2021 AD Review were published in the *Federal Register*.

AMERICAS 112027270

cash deposits (*i.e.*, amounts paid in excess of the lawful 1.57% AD cash deposit rate) provided for imports of subject merchandise produced and exported by J.D. Irving with entry dates from August 9, 2022, until August 1, 2023. This period covers the dates from Commerce's final results in the 2020 administrative review to the date of Commerce's final results in the 2021 administrative review.

### A. No Party, Including J.D. Irving, Requested an Administrative Review of J.D. Irving for the 2020 Period of Review

Central to the analysis of whether parties subject to an AD order will request an administrative review is the fact that "the parties rely on the cash deposit rate then in force for those entries." *Federal-Mogul*, 822 F. Supp. at 788. Accordingly, as noted, in January 2021, when review requests for the 2020 period of review were due in the *Softwood Lumber from Canada* AD proceeding, J.D. Irving's AD cash deposit rate was 1.57%. *See Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 76519, 76520–21 (Dep't Commerce Nov. 30, 2020) (final results 2017-2018 AD review) (assigning a 1.57% AD cash deposit rate to J.D. Irving as a "Non-Selected Company"). No party – neither J.D. Irving nor a domestic producer – requested an AD review of J.D. Irving for the 2020 POR. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12599, 12603 (Dep't Commerce Mar. 4, 2021) (omitting J.D. Irving from the list of Canadian producers/exporters subject to the year-2020 AD review) (Amended Compl. Attachment 6). Consequently, in accordance with 19 C.F.R. § 351.212(c)(1), Commerce instructed CBP to assess AD duties on J.D. Irving's year-2020 entries at the AD cash deposit rate applicable upon entry of the merchandise, and to continue to use 1.57% as the company's AD cash deposit rate going forward. *See* Commerce Automatic Liquidation Instructions, Message No. 1106404 (A-122-857) (Apr. 16, 2021) at ¶¶2 & 5 (Amended Compl. Attachment 7).

AMERICAS 112027270

While Defendant argues that "nothing in § 1581 conditions jurisdiction on whether an administrative review was requested," Def.'s Mot. to Dismiss at 17, this fact, and the resulting operation of law that directly flows from it, is essential to establishing the true nature of the case. Because J.D. Irving was not subject to the review, it is not subject to the dumping margins and cash deposit rates that are set in the *2020 Review Final Results*.  J.D. Irving's claim lies in Commerce's failure to update the *2020 Cash Deposit Instructions* to reflect the correct rate for a company not subject to the review – based on Commerce's setting of J.D. Irving's lawful deposit rate **before and independently from** the *2020 Review Final Results*.  J.D. Irving's filing of a case brief with Commerce on this matter does not change the true nature of this claim – Commerce's proper administration and enforcement of the AD order for companies that are not subject to the review.

### B.      J.D. Irving Is Contesting Commerce's *2020 Cash Deposit Instructions*

Although the Federal Circuit concluded that the true nature of the action in *J.D. Irving I* was a challenge to the *2019 Review Final Results*, the underlying facts of this appeal differ as J.D. Irving was not subject to *2020 Review Final Results.  See J.D. Irving I*, 119 F.4th at 55 (noting that the "particular agency action" underlying J.D. Irving's claim was "Commerce's assignment of a cash deposit rate higher than 1.57% **in the AR 2 preliminary results and Final Results**.") (emphasis added).  As support for its conclusion, the Federal Circuit relied on *Rimco Inc. v. United States*, 98 F.4th 1046 (Fed. Cir. 2024).  In that case, Rimco filed a customs administrative protest, challenging the antidumping and countervailing duty assessment rates for its entries.  *J.D. Irving I*, 119 F.4th at 53 (citing *Rimco*, 98 F.4th at 1050-51).  The court in *Rimco* determined "that the true nature of Rimco's action was to challenge Commerce's [antidumping duty] and [countervailing duty] rate determinations."  98 F.4th at 1053.  Here, however, J.D. Irving is not

14

challenging any rates calculated in the *2020 Review Final Results* and this action is thus distinguishable from both *Rimco* and *J.D. Irving I*.

Instead, this appeal is comparable to *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003). In *Consolidated Bearings*, the court concluded that jurisdiction under § 1581(i) was proper because it related to how Commerce incorrectly applied liquidation instructions from an antidumping administrative review. *See* 348 F.3d at 1001. "The appellant did not challenge or object to the final results; rather, it sought 'application of those final results.'" *J.D. Irving I*, 119 F.4th at 54 (citing *Consol. Bearings*, 348 F.3d at 1002). Similarly here, J.D. Irving does not challenge any aspect of the rates calculated in the *2020 Review Final Results.* Rather, J.D. Irving challenges Commerce's administration of the cash deposit rates through the *2020 Cash Deposit Instructions* for a company like J.D. Irving, which was not subject to the review.

Pursuant to 19 C.F.R. § 351.212(c)(1)(ii), because no administrative review was requested for J.D. Irving's entries during the 2020 AD Review, at the conclusion of that review, Commerce was required to assign J.D. Irving the same cash deposit rate as its AD assessment rate for the 2020 POR: most recently, 1.57%. The statute and Commerce's regulations make this operation of law clear.

### 1. Assessment Rates and Cash Deposit Rates Serve Different Purposes

In the United States, AD duties are assessed on a "retrospective" basis. *See* 19 C.F.R. § 351.212(a). Upon entry of imports subject to an AD duty order, the importer provides CBP with cash deposits, the amount of which is calculated based on the foreign producer/exporter's **estimated rate** of dumping (*i.e.*, the **cash deposit rate**). *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F. 3d 1041, 1047 (Fed. Cir. 2012) ("{T}he cash deposits collected upon entry are

15

considered estimates of the duties that the importer will ultimately have to pay as opposed to payments of the actual duties.").  After importation, Commerce conducts an administrative review to determine the foreign producer/exporter's ***actual rate*** of dumping during the (normally) one-year POR (*i.e.*, ***assessment rate***).  19 U.S.C. § 1675(a).  Upon conclusion of the review, Commerce instructs CBP to assess final AD duties on imports entered during the POR at the assessment rate, and to collect deposits for estimated AD duties on entries going forward at the cash deposit rate. *See* 19 U.S.C. § 1675(a)(2)(C).

### 2. The Cash Deposit Rate Must Be Derived from the Same Dumping Margin as the Assessment Rate

Section 751(a)(2)(C) of the Tariff Act requires Commerce to use the same dumping margin as the basis for both the assessment of AD duties on prior entries and the collection of AD cash deposits on future entries, stating:  "The determination under {§ 1675(a)} shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination ***and*** for deposits of estimated duties."   19 U.S.C. § 1675(a)(2)(C) (emphasis added); *see also Koyo Seiko Co. v. United States*, 110 F. Supp. 2d 934, 942 (Ct. Int'l Trade 2000) (noting that 19 U.S.C. § 1675(a)(2)(C) "requires that both the deposit rate and the assessment rate be derived from the same dumping margin differential"), *aff'd* 258 F.3d 1340, 1342 (Fed. Cir. 2001) (citation omitted) ("Commerce uses the dumping margin to assess antidumping duties on merchandise imported during the review period, and also to calculate 'cash deposits of estimated duties for future entries' of the subject merchandise."); *Torrington Co. v. United States*, 44 F.3d 1572, 1578 (Fed. Cir. 1995) ("Section 1675(a)(2) . . . requires that PUDD, the difference between foreign market value and United States price, serve as the basis for both assessed duties and cash deposits of estimated duties.").

AMERICAS 112027270

Commerce's authority to implement the automatic assessment provision, 19 C.F.R. § 351.212(c), derives from Section 751(a)(2) of the Tariff Act.  *See Federal-Mogul*, 822 F. Supp. at 787–88; *Transcom, Inc. v. United States*, 182 F.3d 876, 880 (Fed. Cir. 1999) (quoting *Federal-Mogul*, 822 F. Supp. at 787–88).  Accordingly, 19 U.S.C. § 1675(a)(2)(C)'s requirement – that the AD cash deposit rate going forward must be based on the same dumping margin used for the assessment rate – also applies to unreviewed foreign producers/exporters that receive assessment and deposit rates by operation of law under 19 C.F.R. § 351.212(c)(1).  *See Federal-Mogul*, 822 F. Supp. at 787–88.

### 3.    Congress's Rationale for Requiring Commerce to Conduct Administrative Reviews Only If Requested

Originally, Commerce was required to conduct administrative reviews of ***all*** foreign producers/exporters subject to AD orders.  *See* Trade Agreements Act of 1979, Pub. L. 96-39, 93 STAT. 144, 175, July 26, 1979, *codified at* 19 U.S.C. § 1675(a)(1) (1982 edition) ("At least once during each 12-month period beginning on the anniversary of the date of publication of . . . an antidumping duty order . . . , the administering authority . . . shall . . . review and determine . . . the amount of any antidumping duty, and . . . shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.").

Changes to the statute in 1984 required Commerce to conduct an administrative review of a foreign producer/exporter only "if a request for such a review has been received."  Trade and Tariff Act of 1984, Pub. L. 98-573, 98 STAT. 2948, 3031, Oct. 30, 1984, *codified at* 19 U.S.C. § 1675(a)(1) (1988 edition).  The "purpose of amending the annual review requirement {was} to reduce the administrative burden on the Department of Commerce of automatically reviewing every outstanding order even though circumstances do not warrant it or parties to the case are

AMERICAS 112027270

satisfied with the existing order." H.R. Report 98-725, 98th Cong., 2nd Sess., at 22–23 (May 1, 1984). Congress intended for the request-for-review requirement to "limit{} the burden on petitioners and respondents, as well as the administering authority." H.R. Report 98-1156, 98th Cong., 2nd Sess., at 181 (Oct. 5, 1984); *see also Federal-Mogul*, 822 F. Supp. at 788 (citing H.R. Report 98-1156 and Congress's "express purpose" for "the 1984 amendment").

In *Federal-Mogul*, this court held that Congress's purpose for amending 19 U.S.C. § 1675(a) would be undermined if the Department were arbitrarily to change an AD cash deposit rate to which interested parties had consented by not requesting a review:

> ***In making a decision whether or not to request an administrative review of certain entries, the parties rely on the cash deposit rate <u>then in force</u> for those entries.*** If the ITA is allowed to arbitrarily change this cash deposit rate for unreviewed firms, which are ***presumably unreviewed because the parties are happy with assessments <u>and future cash deposits</u> being made at that cash deposit rate***, in many cases the parties will be required to request administrative reviews of all entries of the subject merchandise.

*Federal-Mogul*, 822 F. Supp. at 788 (emphases added). Otherwise, in the absence of certainty about the AD deposit rate that would apply, importers, foreign producers, and domestic producers alike would feel compelled to request reviews to protect their interests, which would "have the effect of increasing the number and complexity of administrative reviews thereby defeating the express purpose of the 1984 amendment." *Id.*

On March 28, 1989, Commerce published amended regulations to implement the statutory amendment. *See Antidumping Duties*, 54 Fed. Reg. 12742 (Dep't Commerce Mar. 28, 1989) (final rule). Commerce added 19 C.F.R. § 353.22(a), which permitted interested parties – including U.S. producers, foreign producers/exporters, and importers – to request administrative reviews under 19 U.S.C. § 1675(a). *See id.* at 12778; *see also* 19 C.F.R. § 353.22(a) (1990). Commerce also added 19 C.F.R. § 353.22(e) (*Automatic assessment of duty*), which specified the legal

consequence of interested parties ***not*** requesting an administrative review of a particular foreign producer/exporter subject to an AD duty order. *See Antidumping Duties*, 54 Fed. Reg. at 12778–79; *see also* 19 C.F.R. § 353.22(e) (1990). Section 353.22(e)(1) stated:

> For orders, if the Secretary does not receive a timely request {for review}, the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise . . . at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, . . . ***and to continue to collect the cash deposits previously ordered.***

(emphasis added). In the preamble to 19 C.F.R. § 353.22(e), Commerce noted that the absence of "a timely request for review ***constitutes a determination under section 751 of the dumping margin for the entries made during the review period***." *Antidumping Duties*, 54 Fed. Reg. at 12756 (emphasis added).

The 1990 regulatory provisions described above, first promulgated by Commerce in 1989, remain in effect today under 19 C.F.R. §§ 351.212(c) (*Automatic assessment of antidumping and countervailing duties if no review is requested*) and 351.213(b) (*Request for administrative reviews*). Because the *2020 Cash Deposit Instructions* fail to honor the parties' agreed-upon AD cash deposit rate for J.D. Irving, they are inconsistent with congressional intent discussed above.

Accordingly, Defendant's argument that this case presents an "identical" jurisdictional issue and any distinctions are without a difference is incorrect. The distinctions are material to the argument and highlight that the true nature of the action centers on the administration of the duties imposed by the AD order and in particular the setting of the appropriate cash deposit rate in the *2020 Cash Deposit Instructions*.

AMERICAS 112027270

## IV.    CONCLUSION

For these reasons, J.D. Irving respectfully requests that the Court deny Defendant's motion

to dismiss.

Respectfully submitted,

 /s/ Jay C. Campbell
Jay C. Campbell
Allison J.G. Kepkay
Walter J. Spak – Partner Of Counsel

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Date:  April 18, 2025          (202) 626-3600

20

AMERICAS 112027270

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(B) of the Court's Standard Chambers Procedures, Plaintiff's counsel certifies that this response to Defendant's motion to dismiss complies with the Court's word-limitation rule.  According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 6,130 words.


<u>/s/ Jay C. Campbell</u>
Jay C. Campbell

Date:  April 18, 2025